KREUTZ & CO. *v.* UNITED STATES (No. 4096)[1]

United States Court of Customs and Patent Appeals, November 1, 1937

*Lamb & Lerch* (*John G. Lerch* and *Thomas J. McKenna* of counsel) for appellant. *Joseph R. Jackson,* Assistant Attorney General (*Daniel I. Auster* and *Samuel D. Spector,* special attorneys, of counsel), for the United States.

[1] T. D. 49273.

[Oral argument October 12, 1937, by Mr. John G. Lerch and Mr. Auster]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

LENROOT, Judge, delivered the opinion of the court:

This is an appeal in a reappraisement proceeding. On April 24, 1930, appellant entered at the port of New York a shipment of "strike-on-box" matches from Sweden. Acting under the provisions of section 201 (b) of the Antidumping Act, 1921, the appraiser, being suspicious of dumping, withheld his appraisement report, pending action by the Secretary of the Treasury.

On March 23, 1931, the Secretary of the Treasury made and promulgated a finding of dumping with respect to safety matches of the strike-on-box type imported from Sweden, T. D. 44717, which finding reads as follows:

TREASURY DEPARTMENT, *March 23, 1931.*

*To Collectors of Customs and Others Concerned:*

After due investigation in accordance with the provisions of section 201, antidumping act, 1921, I find that the industry of manufacturing safety matches of the strike-on-box type in the United States is being and is likely to be injured by reason of the importation into the United States of safety matches of the strike-on-box type from Sweden, and that such safety matches of the strike-on-box type have been sold and are likely to be sold in the United States at less than their fair value.

A. W. MELLON,
*Secretary of the Treasury.*

On April 20, 1933, the appraiser appraised the involved matches under the provisions of the Antidumping Act, 1921, and made report thereof to the collector, stating that T. D. 44717 was applicable, that there was no foreign market value of the merchandise, and stating the exporter's sales price and the cost of production of the matches.

Appellant appealed to reappraisement. Upon such appeal appellant conceded that if the appraiser had any right under the law to appraise the involved merchandise under said antidumping act, the appraisal made under said act was correct. Appraisement of the merchandise under the Tariff Act of 1922 is not here involved.

The sole question raised by appellant's appeal was, and is, whether the said finding of dumping was applicable to the importation here involved.

In view of this concession, only sections 201 (a), 201 (b), and 209 of said antidumping act are relevant to the issue. These sections read as follows:

DUMPING INVESTIGATION

SEC. 201. (a) That whenever the Secretary of the Treasury (hereinafter in this Act called the "Secretary"), after such investigation as he deems necessary, finds

that an industry in the United States is being or is likely to be injured, or is prevented from being established, by reason of the importation into the United States of a class or kind of foreign merchandise, and that merchandise of such class or kind is being sold or is likely to be sold in the United States or elsewhere at less than its fair value, then he shall make such finding public to the extent he deems necessary, together with a description of the class or kind of merchandise to which it applies in such detail as may be necessary for the guidance of the appraising officers.

(b) Whenever, in the case of any imported merchandise of a class or kind as to which the Secretary has not so made public a finding, the appraiser or person acting as appraiser has reason to believe or suspect, from the invoice or other papers or from information presented to him, that the purchase price is less, or that the exporter's sales price is less or likely to be less, than the foreign market value (or, in the absence of such value, than the cost of production) he shall forthwith, under regulations prescribed by the Secretary, notify the Secretary of such fact and withhold his appraisement report to the collector as to such merchandise until the further order of the Secretary, or until the Secretary has made public a finding as provided in subdivision (a) in regard to such merchandise.

### DUTIES OF APPRAISERS

Sec. 209. That in the case of all imported merchandise, whether dutiable or ree of duty, of a class or kind as to which the Secretary has made public a finding as provided in section 201, and as to which the appraiser or person acting as appraiser has made no appraisement report to the collector before such finding has been so made public, it shall be the duty of each appraiser or person acting as appraiser, by all reasonable ways and means to ascertain, estimate, and appraise (any invoice or affidavit thereto or statement of cost of production to the contrary notwithstanding) and report to the collector the foreign market value or the cost of production, as the case may be, the purchase price, and the exporter's sales price, and any other facts which the Secretary may deem necessary for the purposes of this title.

The trial court held that the said finding of dumping made by the Secretary of the Treasury applied to the importation involved, and affirmed the finding of the appraiser under the provisions of said anti-dumping act with respect to the exporter's sales price and cost of production.

The appellate division affirmed the decision of the trial court, and appellant appealed therefrom to this court.

As hereinbefore indicated, the sole question before us is whether the finding of dumping by the Secretary of the Treasury, issued March 23, 1931, is applicable to the importation here involved, entered on April 24, 1930, nearly eleven months before the issuance of said finding by the Secretary.

It will be observed that the finding reads:

*  *  *  I find that the industry of manufacturing safety matches of the strike-on-box type in the United States *is being and is likely to be injured* by reason of the importation into the United States of safety matches of the strike-on-box type from Sweden, *  *  *  . [Italics ours.]

It is the contention of appellant that the language employed by the Secretary in said finding "refers exclusively to the present and the future and, therefore, cannot be interpreted as affecting the past." In other words, appellant contends that the phrase "is being and is likely to be injured" precludes the application of the finding to any importations made prior to the promulgation of the same, viz, March 23, 1931, and hence precludes the application of the finding to the importation here in question.

In the case of *Kleberg & Co. (Inc.)* v. *United States*, 21 C. C. P. A. (Customs) 110, T. D. 46446, it was held in effect that a finding of dumping by the Secretary of the Treasury could have a retroactive effect and be made to apply to goods imported before the finding was issued. However, in the case at bar, it is not argued that the Secretary could not have made his finding retroactive, but that he did not do so, in that he used the words "is being and is likely to be injured," and that, had the Secretary intended that his finding should relate back to the time of the importation of the matches involved, he would have used apt words to express that intention.

The appellate division relied in part upon a construction of the word "is" as relating to the past as well as the present. In its decision we find the following:

\* \* \* In 23 Cyc. p. 357, we find the following:

*Is.* The present indicative singular of the substantive verb "to be", which may have, however, when applied to a transaction yet to come, a future signification. So, too, when warranted by the context or by the intent with which it is used, the word may refer to something in the past.

We find that the decided cases are conflicting upon this point, and we deem it unnecessary to express any opinion with respect thereto.

It will be observed that the finding of the Secretary, *supra*, is in the exact words of the statute, section 201 (a), *supra*, insofar as the words "is being and is likely to be injured" are concerned. It must be assumed that he used the said words in the same sense that they were used in section 201 (a), and it seems to us immaterial whether they should be construed as finding that dumping existed at the time the importations were made, or only that dumping existed at the date of the promulgation of the finding. Section 209 of said antidumping act clearly provides that, in the case of all imported merchandise *of a class or kind* as to which the Secretary has made public a finding, and as to which there has been made no appraisement report, appraisement thereof shall be made pursuant to the provisions of the antidumping act, this of course being in addition to the appraisement made under the general tariff law under which the merchandise is imported.

The finding of the Secretary being made in the exact words of the statue with respect to the time of dumping, it follows that it was the duty of the appraiser to obey the mandate of section 209, *supra*, and appraise the matches here involved in accordance with the provisions of the antidumping act.

The antidumping act was in existence at the time this importation was made. The importer was notified of suspicion of dumping, and that the report of appraisement of the merchandise would be withheld. As was said by us in the case of *Kleberg & Co. (Inc.)* v. *United States, supra*, the goods were imported subject to the provisions of the antidumping act, and the importer's rights must be measured thereby.

It is well established that Congress may determine what articles may be imported, and the terms upon which importation is permitted. *Board of Trustees of the University of Illinois* v. *United States*, 289 U. S. 48.

There can be no doubt of the power of Congress to provide that, in certain cases, appraisal of specific imported merchandise be withheld, and direct the appraisal thereof and levy of duties thereon contingent upon the finding that, at a later date, an industry of the United States is or is likely to be injured by the importation of merchandise of that class or kind, and that merchandise of such class or kind is being sold or is likely to be sold in the United States at less than its fair value.

It therefore seems to us immaterial whether the word "is," as used in section 201 (a), *supra*, and in the finding of the Secretary of the Treasury, be regarded as relating back to the time of the importation here involved, or whether it should be regarded as relating only to the time of the promulgation of said finding. In either event, the appraisal before us was in pursuance of the mandate of section 209 of said antidumping act.

For the reasons herein stated, the judgment appealed from is *affirmed*.